# In the United States Court of Federal Claims

| | |
|---|---|
| JERROLL M. SANDERS,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | No. 24-cv-1301<br><br>Filed: March 31, 2025 |

*Jerroll M. Sanders*, Florissant, Missouri, Plaintiff, appearing *pro se*.

*Daniel Bertoni*, United States Department of Justice, Civil Division, Commercial Litigation Branch, Washington, D.C., appearing for Defendant.

### MEMORANDUM & ORDER

Plaintiff Jerroll M. Sanders, proceeding *pro se*, brings a single claim for unjust enrichment, seeking over $1 billion in restitution due to the injustices of slavery in the United States. However, unjust enrichment is a claim based on an implied-in-law contract, and as such, has long been held to fall outside the Court of Federal Claims' limited jurisdiction. *Cross Country Indus., Inc. v. United States*, 231 Ct. Cl. 899, 901 (1982). Misled by fake cases made up by an artificial intelligence program, Plaintiff insists otherwise. But the actual, legitimate case law is clear: this Court must dismiss Plaintiff's claim for lack of jurisdiction.

### PROCEDURAL BACKGROUND

Plaintiff filed her Complaint in this action on August 23, 2024. ECF No. 1 (Complaint). On September 20, 2024, Defendant filed a Motion to Dismiss Plaintiff's Complaint. ECF No. 5. In response, Plaintiff filed an Amended Complaint on October 7, 2024, and the Court denied

Defendant's Motion to Dismiss as moot on October 10, 2024. ECF No. 6 (First Amended Complaint); ECF No. 7 (denying Motion to Dismiss). Six days later, Plaintiff filed a Motion for Leave to file a Second Amended Complaint, which this Court granted on October 18, 2024. ECF No. 9 (Motion to Amend); ECF No. 10 (granting Motion to Amend); ECF No. 13 (Second Amended Complaint or Am. Compl.).[1] On October 28, 2024, Defendant filed its Motion to Dismiss the Second Amended Complaint pursuant to Rule 12(b)(1) of the Rules of the Court of Federal Claims (Rule(s)). ECF No. 12 (Def. Mot.). Plaintiff responded to Defendant's Motion to Dismiss on November 18, 2024, and Defendant filed its Reply in support of its Motion on December 2, 2024. *See* ECF No. 14 (Response or Pl. Resp.); ECF No. 15 (Reply or Def. Reply).

## FACTUAL BACKGROUND

As noted, Plaintiff seeks restitution of over $1 billion from the United States due to the injustices of slavery in the United States. Am. Compl. at 1–2, 5–8.[2] Plaintiff recounts this country's history of slavery and alleges that the United States Government was unjustly enriched by nearly $54 trillion through "forcibly extract[ing] lifelong, unpaid labor from non-Hispanic U.S. chattel slaves." Pl. Resp. at 2; Am. Compl. at 2–5. Plaintiff further alleges that slave labor contributed to a massive increase in the United States' Gross Domestic Product (GDP). Am. Compl. at 1, 5. Plaintiff asserts that the United States' unjust enrichment totals the entire GDP of the United States from 1619 until 1937, plus a share of the GDP from 1937 to present. *Id.* at 6.

---

[1] The Court ordered Plaintiff to file her Second Amended Complaint as a separate docket entry by October 22, 2024. ECF No. 10. Plaintiff failed to do so. On October 30, 2024, the Court directed the Clerk of Court to docket Plaintiff's Proposed Second Amended Complaint as a separate docket entry *nunc pro tunc*, October 22, 2024. ECF No. 12. Therefore, Defendant's Motion to Dismiss, dated October 28, 2024, references Plaintiff's Second Amended Complaint, which was docketed on October 30, 2024, *nunc pro tunc*, October 22, 2024. *See* Def. Mot. at 1.

[2] Citations throughout this Memorandum and Order reference the ECF-assigned page numbers, which do not always correspond to the pagination within the document.

Plaintiff contends this amounts to approximately $54 trillion of unjust enrichment and claims she is entitled to her "pro rata" share of the $54 trillion, which she calculates is just over $1 billion. *Id.* at 7–8.

Plaintiff sole claim is for unjust enrichment, which she at times describes as "restitution resulting from unjust enrichment." Pl. Resp. at 6; Am. Compl. at 2. She claims that the elements of unjust enrichment are met because (i) Defendant received a benefit (gains to the United States economy), (ii) "[t]he benefit was obtained at the expense of plaintiff's ancestor[s]" (non-Hispanic chattel slaves), and (iii) "[r]estitution is necessary to restore fairness and address unjust enrichment." Am. Compl. at 5. In her Second Amended Complaint, Plaintiff asserts that this Court has jurisdiction to hear her claim because this Court can "recogniz[e] the existence of an implied-in-law contract (quasi-contract) between [Plaintiff] and [D]efendant." *Id.* at 6. Plaintiff altered her theory of jurisdiction in her Response, however. There, she states that she "does not ground her cause of action on an implied contract" and that her Second Amended Complaint "does not even reference an implied-in-law contract." Pl. Resp. at 3 (emphasis omitted). Instead, she asserts the Court has jurisdiction because "restitution is a money-mandating source," and that the Court of Federal Claims can "hear cases involving monetary damages based on . . . certain non-contractual claims, including those grounded in principles of unjust enrichment." *Id.* at 3, 5 (emphasis omitted). However, Plaintiff also states that she is "asking the court to use the [quasi-contract] construct to compel the U.S. Government to pay restitution." *Id.* at 11.

## APPLICABLE LEGAL STANDARDS

### I.     Jurisdiction of the Court of Federal Claims

"The Court of Federal Claims is a court of limited jurisdiction." *Marcum LLP v. United States*, 753 F.3d 1380, 1382 (Fed. Cir. 2014). The Tucker Act vests this Court with jurisdiction over any claim against the United States for money damages "founded either upon the

3

Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States . . . in cases not sounding in tort." 28 U.S.C. § 1491(a)(1); *see United States v. Mitchell*, 463 U.S. 206, 212 (1983). While the Tucker Act is a limited waiver of sovereign immunity, it does not itself create any enforceable right against the United States. *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (en banc in relevant part). Rather, plaintiffs "must identify a separate source of substantive law that creates the right to money damages." *Id.*

There are three types of monetary claims that fall within the Court's Tucker Act jurisdiction: (1) claims "pursuant to contracts with the United States," (2) claims "to recover illegal exactions of money by the United States," and (3) claims "brought pursuant to money-mandating constitutional provisions, statutes, regulations, or executive orders." *Martinez v. United States*, 333 F.3d 1295, 1302–03 (Fed. Cir. 2003) (en banc); *Deweese v. United States*, No. 2024-1791, 2024 WL 5002116, at *2 (Fed. Cir. Dec. 6, 2024) (citing *Ontario Power Generation, Inc. v. United States*, 369 F.3d 1298, 1301 (Fed. Cir. 2004)).

This Court's jurisdiction over claims brought pursuant to contracts with the United States "extends only to contracts either express or implied in fact, and not to claims on contracts implied in law." *Trauma Serv. Grp. v. United States*, 104 F.3d 1321, 1324–25 (Fed. Cir. 1997) (quoting *Hercules, Inc. v. United States*, 516 U.S. 417, 423 (1996)). "An agreement implied in fact is 'founded upon a meeting of minds,'" which is inferred from conduct of the parties showing their tacit understanding. *Hercules, Inc.*, 516 U.S. at 424 (quoting *Baltimore & Ohio R.R. Co. v. United States*, 261 U.S. 592, 597 (1923)); *see Starrett v. United States*, No. 22-1555, 2023 WL 152827 at *3 (Fed. Cir. Jan. 11, 2023) (noting that both express and implied-in-fact contracts require mutual intent to contract (quoting *Trauma Serv. Grp.*, 104 F.3d at 1325)). By contrast, "an agreement

implied in law is a 'fiction of law' where 'a promise is imputed to perform a legal duty, as to repay money obtained by fraud or duress.'" *Hercules, Inc.*, 516 U.S. at 424 at 424 (quoting *Baltimore & Ohio R.R. Co.*, 261 U.S. at 597).

## II.     Standard of Review: Rule 12(b)(1)

When resolving a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, this Court "accepts as true all uncontroverted factual allegations in the complaint, and construes them in the light most favorable to the plaintiff." *Estes Express Lines v. United States*, 739 F.3d 689, 692 (Fed. Cir. 2014); *see also Banks v. United States*, 741 F.3d 1268, 1277 (Fed. Cir. 2014). While this Court holds *pro se* pleadings "to less stringent standards than formal pleadings drafted by lawyers," *pro se* plaintiffs must still prove by a preponderance of the evidence that this Court has subject matter jurisdiction. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *Ali-Bey v. United States*, No. 24-1629, 2025 WL 855751, at *2 (Fed. Cir. Mar. 19, 2025). While a *pro se* complaint may include ambiguities, the fact that a litigant chooses to proceed *pro se* "does not excuse [] failures" on the merits. *Henke v. United States*, 60 F.3d 795, 799 (Fed. Cir. 1995).

## DISCUSSION

## I.     This Court Lacks Jurisdiction Over Plaintiff's Unjust Enrichment Claim.

Plaintiff alleges that the United States has been unjustly enriched by the institution of slavery in the United States. Am. Compl. at 1–2. However, taking all of Plaintiff's allegations as true, this Court nevertheless lacks jurisdiction over her unjust enrichment claim. Indeed, it is well-established that this Court lacks jurisdiction over unjust enrichment claims as they are based upon implied-in-law contracts. *Cross Country Indus*, 231 Ct. Cl. at 901 (1982); *Aetna Cas. & Sur. Co. v. United States*, 655 F.2d 1047, 1059–60 (Ct. Cl. 1981); *Cleveland Chair Co. v. United States*, 557 F.2d 244, 246 (Ct. Cl. 1977); *Jarvis v. United States*, 154 Fed. Cl. 712, 718 (2021), *aff'd*, No. 22-

1006, 2022 WL 1009728 (Fed. Cir. Apr. 5, 2022); *Jarurn Invs., LLC v. United States*, 144 Fed. Cl. 255, 262 (2019); *LW Constr. of Charleston, LLC v. United States*, 139 Fed. Cl. 254, 297 (2018); *Copar Pumice Co., Inc. v. United States*, 112 Fed. Cl. 515, 538 (2013); *see Mitchell*, 463 U.S. at 218 ("[W]e have held that the [Tucker] Act does not reach claims based on contracts implied in law, as opposed to those implied in fact.").

Notably, Plaintiff does not engage with this jurisprudence, which consistently and unambiguously establishes that unjust enrichment claims are outside this Court's jurisdiction. She instead simply insists that her unjust enrichment claim is not grounded in an implied-in-law contract and thus is properly before this Court.[3] *See* Pl. Resp. at 3–6. She contends that she does not base her claim on an implied-in-law contract because there was no "mutual assent" between slaves and the United States and therefore there was no "contract with the U.S. Government for services provided during enslavement."[4] *Id.* at 5. However, as noted, the defining feature of an implied-in-law contract is that it is *not* based on any meeting of the minds; rather, it is a "fiction of law" that "proceed[s] from a perception that a party ought to be bound rather than from a conclusion that a party has agreed to be bound." *Hercules Inc.*, 516 U.S. at 424 (quoting *Baltimore & Ohio R.R. Co.*, 261 U.S. at 597); *Aetna Cas. & Sur. Co.*, 655 F.2d at 1059. Thus, Plaintiff's argument (that there was no meeting of the minds) only reaffirms that her claim is founded upon an implied-in-law contract. Plaintiff cannot otherwise disentangle her unjust enrichment claim from an implied-in-law contract. *See Hercules Inc.*, 516 U.S. at 424; *Frank & Breslow, LLP v.*

---

[3] However, as stated above, Plaintiff contradicts this assertion at various points in her briefing and asks the Court to find "an implied-in-law contract (quasi-contract) between [Plaintiff] and [D]efendant." Am. Compl. at 6; Pl. Resp. at 11.

[4] Plaintiff further disclaims that she is asserting a claim based on *any* kind of contract. Pl. Resp. at 4–5 ("Nowhere in P[laintiff]'s Second Amended Complaint does she imply that the U.S. Government and her ancestors formed a contract, implied or otherwise.").

*United States*, 43 Fed. Cl. 65, 68–69 (1999) ("To the extent that [plaintiff's] theory is based on a theory of unjust enrichment, that doctrine assumes the existence of a contract implied in law.") (alteration in original) (quoting *Glopak Corp. v. United States*, 12 Cl. Ct. 96, 104 n.6 (1987), *aff'd*, 851 F.2d 334 (Fed. Cir. 1988)).  As Plaintiff's unjust enrichment claim is necessarily based on an implied-in-law contract, the Court lacks jurisdiction over her unjust enrichment claim.

Even if there were a way around this overwhelming case law and Plaintiff could sever her unjust enrichment claim from implied-in-law contracts, Plaintiff would still need to identify a separate source of law creating a right to money damages.  *See Fisher*, 402 F.3d at 1172 (en banc in relevant part) (noting that "a plaintiff must identify a separate source of substantive law that creates the right to money damages"); *Rojas-Vega v. United States*, 782 F. App'x 994, 995 (Fed. Cir. 2019).  She does not do so.  Instead, she asserts that restitution is a standalone money mandating source of law.  Pl. Resp. at 5 (asserting that "restitution is a money-mandating source"); s*ee* Am. Compl. at 2 (incorrectly alleging that this Court has jurisdiction over "unjust enrichment claims . . . including those seeking restitution").  However, to invoke this Court's jurisdiction, a plaintiff's claim must be brought "pursuant to money-mandating constitutional provisions, statutes, regulations, or executive orders." [5]  *Martinez*, 333 F.3d at 1302–03.  Here, Plaintiff does not attempt to identify *any* money-mandating statute, regulation, or constitutional provision upon which she brings her claim; instead, she simply makes the conclusory assertion that "restitution is a money-mandating."  Pl. Resp. at 5.  Accordingly, as Plaintiff has not "identified a source of law that commands that the United States pay" restitution to those in her situation, this Court lacks

---

[5] Plaintiff states that she is not alleging any contract, express or implied-in-fact, between the United States Government and "non-Hispanic chattel slaves," and thus her claim does not fall within this Court's jurisdiction as a claim brought pursuant to a contract.  Pl. Resp. at 4–5; *see Martinez*, 333 F.3d at 1302–03.

jurisdiction over Plaintiff's claim for restitution for unjust enrichment.[6] *Jarvis,* 154 Fed. Cl. at 719−20; *see Rick's Mushroom Serv., Inc. v. United States*, 521 F.3d 1338, 1343 (Fed. Cir. 2008) (stating that a plaintiff in this Court "must look beyond the Tucker Act to identify a substantive source of law that creates the right to recovery of money damages against the United States"); *see also Westfed Holdings*, 52 Fed. Cl. at 149 (2002) ("Substantive restitution claims are not within the court's jurisdiction."); *Mitchell v. United States*, No. 23-1745, 2024 WL 490879, at *2 (Fed. Cl. Feb. 8, 2024) ("[T]here is no independent money-mandating source of law that grants this Court jurisdiction over [claims for unjust enrichment].").

## II. Plaintiff's Filings Cite to Nonexistent, AI-Generated Authority.

Notwithstanding the overwhelming case law directly to the contrary, Plaintiff insists that this Court has jurisdiction over unjust enrichment claims. *See* Am. Compl. at 1–2, 5–6; Pl. Resp. at 3–6; *supra* Discussion Section I. To support this contention, she cites to multiple fake cases standing for this proposition. For example, Plaintiff cites to "*Tucker v. United States*, 24 Cl. Ct. 536 (1991)" in her Second Amended Complaint and to "*Fargo v. United States*, 184 F.3d 1096

---

[6] In certain circumstances, this Court can award restitution as a remedy for breach of an express or implied-in-fact contract. *Amber Res. Co. v. United States,* 538 F.3d 1358, 1378–79 (Fed. Cir. 2008) ("[B]ecause an award of restitution in a breach of contract case is a standard contract-based remedy, the Court of Federal Claims has jurisdiction to grant that form of relief."). As noted, Plaintiff expressly avers that she does not bring an express or implied-in-fact contract claim; thus, she cannot invoke this line of cases to establish jurisdiction over her unjust enrichment claim. *See* Pl. Resp. at 4–5; *Blue Cross & Blue Shield Ass'n v. United States*, 13 Cl. Ct. 710, 716 (1987), *aff'd*, 852 F.2d 1294 (Fed. Cir. 1988) ("[T]o the extent a claim for restitution is based upon an implied-in-law contract, rather than an implied-in-fact contract, the claim falls outside of the Claims Court's Tucker Act jurisdiction."). Further, the Federal Circuit has held that restitution is unavailable as a remedy "to prevent the unjust enrichment of the breaching party." *Amber Res,* 538 F.3d at 1378–79 (quoting *Acme Process Equip. Co. v. United States*, 347 F.2d 509, 530 (Ct. Cl. 1965), *rev'd on other grounds*, 385 U.S. 138 (1966)); *see Mann v. United States*, 68 Fed. Cl. 666, 671 (2005) (finding that restitution damages can be awarded for a breach of an actual contract but not for an implied-in-law contract). Accordingly, since Plaintiff asserts a claim for unjust enrichment, and disavows that she is alleging an express or implied-in-fact contract claim, the Court cannot award Plaintiff restitution damages.

8

(Fed. Cir. 1999)," "*Bristol Bay Native Corporation v. United States*, 87 Fed. Cl. 122 (2009)," and "*Quantum Construction, Inc. v. United States*, 54 Fed. Cl. 432 (2002)" in her Response to Defendant's Motion to Dismiss.  Am. Compl. at 6; Pl. Resp. at 5–6.

These cases do not exist.  The reporter citation given for each case points to a page in the middle of a case with a different name, different subject, and in one case, a different court than the one included in Plaintiff's citation.[7]  *See* Def. Reply. at 4–6.  For instance, Plaintiff cites "*Fargo v. United States*, 184 F.3d 1096 (Fed. Cir. 1999)."  Pl. Resp. at 5.  However, the reporter citation points to a page in *Lord v. Wood*, 184 F.3d 1083 (9th Cir. 1999), which concerns a petition for writ of *habeas corpus*.  Neither Defendant nor the Court could locate any case named *Fargo v. United States* within the Court of Federal Claims or the Federal Circuit.  Def. Reply at 4–5.  Plaintiff's citations to *Tucker v. United States*, 24 Cl. Ct. 536 (1991), *Bristol Bay Native Corporation v. United States*, 87 Fed. Cl. 122 (2009), and *Quantum Construction, Inc. v. United States*, 54 Fed. Cl. 432 (2002) fare no better.  *See id.* at 4–6.

Defendant suggests that these nonexistent cases may be the product of an artificial intelligence (AI) program.  Def. Reply at 6.  It is no secret that generative AI programs are known to "hallucinate" nonexistent cases, and with the advent of AI, courts have seen a rash of cases in which both counsel and *pro se* litigants have cited such fake, hallucinated cases in their briefs.  *See, e.g.*, Eugene Volokh, *Six Federal Cases of Self-Represented Litigants Citing Fake Cases in*

---

[7] Plaintiff also cites "*B. Hunt Building Co., LLC v. United States*, 61 Fed. Cl. 243 (2004)."  Pl. Resp. at 6.  Unlike the other four cases, the reporter citation corresponds with a case with a similar name (although without the initial "B" and with "Ltd." instead of "LLC") in the Court of Federal Claims.  *Id.*; *Hunt Building Co., Ltd. v. United States*, 61 Fed. Cl. 243 (2004).  Plaintiff claims that *B. Hunt Building* "acknowledged the possibility of unjust enrichment claims in the context of government contracts."  Pl. Resp. at 6.  However, *Hunt* is a bid protest case lacking any mention of unjust enrichment.  *See Hunt*, 61 Fed. Cl. 243.

*Briefs, Likely Because They Used AI Programs*, Reason: Volokh Conspiracy (Nov. 11, 2023, 10:27 AM), https://reason.com/volokh/2023/11/13/self-represented-litigants-use-ai-to-write-briefs-produce-hallucinated-citations. The cases referenced by Plaintiff have the hallmarks of cases generated by AI found in other courts.[8]

Assuming Plaintiff used AI to help write her briefs, she wasted not only Defendant's time, but also judicial resources. *See Morgan v. Cmty. Against Violence*, No. 23-cv-353, 2023 WL 6976510, at *8 (D.N.M. Oct. 23, 2023). Further, she violated her Rule 11 obligations. *See* Rule 11(b)(2) ("By presenting to the court a pleading, written motion, or other paper . . . an attorney or unrepresented party certifies that . . . the claims, defenses, and other legal contentions are warranted by existing law . . . ."). Under Rule 11, which applies to *pro se* litigants, parties appearing before the Court are obligated—at a minimum—to "confirm the existence and validity of, the legal authorities on which they rely." *Park*, 91 F.4th at 615; *Aldridge v. United States*, 67 Fed. Cl. 113, 123 (2005) (citing *Constant v. United States*, 929 F.2d 654, 658 (Fed. Cir. 1991)). The purpose of this requirement is to "deter baseless filings in district court." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990). Plaintiff's briefing—built on AI-generated cases that stand for legal propositions in direct contravention of actual case law—is the epitome of baseless. While courts afford *pro se* litigants considerable leeway, that leeway does not relieve *pro se* litigants of their obligation under Rule 11 to confirm the validity of any cited legal authority. *Morgan*, 2023 WL 6976510, at *7; *Anonymous*, 2024 WL 3460049, at *7 ("Without question, it is

---

[8] Fake cases generated by AI often have reporter citations that lead to cases with different names, in different courts, and about different subjects. *See United States v. Hayes*, --- F. Supp. 3d ----, 2025 WL 235531, at *8 (E.D. Cal. Jan. 17, 2025) (describing the hallmarks of citations generated by AI); *Mata v. Avianca, Inc.*, 678 F. Supp. 3d 443, 453–59 (S.D.N.Y. 2023) (discussing citation of fake cases generated by artificial intelligence); *see also Park v. Kim*, 91 F.4th 610, 614 (2d Cir. 2024); *Anonymous v. New York City Dep't of Educ.*, No. 1:24-cv-04232, 2024 WL 3460049, at *7 (S.D.N.Y. July 18, 2024) (noting high rate of hallucinations).

improper and unacceptable for litigants – including *pro se* litigants – to submit 'non-existent judicial opinions with fake quotes and citations.'" (quoting *Mata*, 678 F. Supp. 3d at 448)). Such use of AI is an "abuse of the adversary system" and unacceptable. *Park*, 91 F.4th at 615 (quoting *Mata*, 678 F. Supp. 3d at 461). Beyond the waste of resources and the violation of her Rule 11 obligations, Plaintiff's unquestioning reliance on AI hindered her own ability to effectively represent herself. Misled by the fake cases, Plaintiff cost herself an opportunity to make the best possible arguments in support of her claim for relief.

The Court notes that other judges have sanctioned attorneys for citing fake, AI-generated cases. *See Hayes*, 2025 WL 235531, at *14 (collecting cases). These sanctions have included fines, requiring payment of the opposing party's fees, striking filings, dismissal of the action, and initiating disciplinary actions. *Id.* While *pro se* litigants have been given more latitude than attorneys for the use of fake AI-generated cases, some courts have sanctioned *pro se* litigants for this conduct. *See Kruse v. Karlen*, 692 S.W.3d 43, 54 (Mo. Ct. App. 2024) (sanctioning pro se litigant who submitted false citations by imposing a $10,000 fine for the opposing party's legal fees); *Thomas v. Pangburn*, No. CV423-046, 2023 WL 9425765, at *4–7 (S.D. Ga. Oct. 6, 2023) (recommending dismissal of *pro se* plaintiff's amended complaint as sanction for citing fake cases), *R. & R. adopted*, 2024 WL 329947 (S.D. Ga. Jan. 29, 2024), *appeal dismissed*, 2024 WL 5389428 (11th Cir. Oct. 21, 2024).

Nonetheless, given the relative novelty of AI, the Court recognizes that Plaintiff may not have been aware of the risk that AI programs can generate fake case citations and other legal misstatements. For this reason, many judges opt to warn—rather than sanction—*pro se* litigants who have improperly used AI instead of imposing sanctions. *See, e.g.*, *Dukuray v. Experian Info. Sols.*, No. 23 Civ. 9043, 2024 WL 3812259, at *11–12 (S.D.N.Y. July 26, 2024), *R. & R. adopted*,

11

No. 23 Civ. 9043, 2024 WL 3936347 (S.D.N.Y. Aug. 26, 2024); *Anonymous,* 2024 WL 3460049, at *7; *Transamerica Life Ins. Co. v. Williams*, No. CV-24-00379, 2024 WL 4108005, at *2 n.3 (D. Ariz. Sept. 6, 2024).  Here, too, the Court finds a warning to be appropriate, as the case must be dismissed for lack of jurisdiction and Defendant does not request sanctions.  Under other circumstances, the Court may find sanctions to be appropriate, even for *pro se* litigants.  Nevertheless, Plaintiff is now aware of the risks of using AI, and is on notice that she may be subject to sanctions should she cite fake, AI-generated legal authority again.  Accordingly, Plaintiff—and future litigants in this Court—are advised that any filings with citations to nonexistent cases may result in sanctions, including the striking of filings, the imposition of filing restrictions, monetary penalties, or dismissal of the action.  *See Dukuray*, 2024 WL 3812259, at *11.

## CONCLUSION

For the foregoing reasons, this Court **GRANTS** Defendant's Motion to Dismiss (ECF No. 11) pursuant to Rule 12(b)(1).  Accordingly, Plaintiff's Second Amended Complaint (ECF No. 13) is **DISMISSED** without leave to be replead.  The Clerk of Court is **DIRECTED** to enter Judgment accordingly.

IT IS SO ORDERED.



*Eleni M. Roumel*
ELENI M. ROUMEL
Judge

Dated: March 31, 2025
Washington, D.C.